UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEIDELBERG MATERIALS U.S. CEMENT, LLC | ) | |
| Plaintiff, | ) | |
| and | ) | Case No. |
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, LOCAL 10-00018 | ) | COMPLAINT |
| Defendant. | ) | |

## COMPLAINT TO VACATE ARBITRATION AWARD

Plaintiff Heidelberg Materials U.S. Cement, LLC ("Heidelberg Materials" or "Plaintiff"), by and through its attorney, Christopher M. Lucca of Clark Hill, files this action to vacate an arbitration award pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 et seq., and states as follows:

## INTRODUCTION

1. This is an action to vacate an arbitration award ("the Award") issued on April 6, 2026, by Arbitrator Lisa C. Charles.

2. The Award improperly reinstates a Maintenance Mechanic terminated for gross misconduct, and more specifically, for theft of Plaintiff's heavy industrial property.

3. Plaintiff seeks relief because the Arbitrator exceeded her contractually defined authority under the collective bargaining agreement ("the Agreement").

4. The Award fails to draw its essence from the parties' agreement, ignores the permanent breach of employer trust, and fails to account for critical, newly discovered evidence fundamentally destroying the terminated employee's credibility.

1

## JURISDICTION AND VENUE

5.      This action arises under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 et seq. ("LMRA").  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and the LMRA.

6.      Venue is proper in this District under 29 U.S.C. § 185 and 28 U.S.C. § 1391 because Defendant United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local 7-00030 ("Union") is a labor organization and its duly authorized officers or agents are engaged in representing or acting for employee members in this District, the events or giving rise to the claims occurred in this District, and Heidelberg Materials resides in this District.

## PARTIES

7.      Plaintiff Heidelberg Materials is a supplier of cement, aggregates, ready mixed concrete and asphalt with more than four hundred fifty (450) locations and approximately none thousand (9,000) employees. Heidelberg Materials maintains a cement plant in Nazareth, Pennsylvania that is central to this action. Heidelberg Materials is an employer in an industry affecting commerce within the meaning of the LMRA.

8.      Defendant Union is the certified collective bargaining representatives for a unit of operations, production, and maintenance employees employed by Heidelberg Materials at its Nazareth, Pennsylvania cement plant. The Union is a labor organization within the meaning of the LMRA. The Union maintains an office in Pittsburgh, Pennsylvania.

## FACTUAL BACKGROUND

9.      Plaintiff is one of the world's largest building materials companies producing cement, aggregates, ready-mixed concrete, and asphalt on five continents. This dispute arises at Heidelberg Materials' Nazareth Cement Plant located in Nazareth, Pennsylvania.

10.     Plaintiff and the Union have been parties to a collective bargaining agreement which has set forth the terms and conditions of employment for employees in the bargaining unit at the Nazareth facility in Nazareth, Pennsylvania. *See* Exhibit A (Collective Bargaining Agreement).

11.     The Agreement contains an arbitration provision that mandates that all of the disputes between the parties involving interpretation of, application of, or compliance with the collective bargaining agreement be submitted to final and binding arbitration before a mutually selected arbitrator.  *Id.*

12.     The parties' collective bargaining agreement contains a grievance procedure that sets forth procedures for dispute resolution, including the limits on an arbitrator's authority, and it specifically states as follows:

Section 8. Grievance Adjustment and Arbitration

In the event an unresolved grievance is submitted by the Union to arbitration, the arbitrator will make his findings and render his decision to resolve the disagreement. Only one grievance may be heard per arbitration unless otherwise mutually agreed by the parties. The arbitrator shall not have jurisdiction to add to, modify, vary, change or remove any terms of this Agreement. The decision of the arbitrator shall be in writing, and shall be final and binding upon the Company, the Union and the affected employees.

*See* Exhibit A, Section 8.

13.     Section 2 (Management) of the Agreement expressly reserves Plaintiff's exclusive right to discharge employees for just cause. *See* Exhibit A, Section 2.

14.     Plaintiff's Progressive Discipline Policy, Employee Conduct Rule 22 mandates immediate termination for unauthorized removal or theft of company property regardless of value.

15.     Scott Brearman was employed by Plaintiff as a Maintenance Mechanic tasked with unmonitored access to high-value equipment.

16. On December 11, 2024, a $6,800 industrial motor owned by Plaintiff went missing during Mr. Brearman's shift.

17. Following the theft, Plaintiff conducted an investigation, reviewed by its Human Resources Department, that included witness statements, security footage, scrapyard documentation, and photographs, and it was concluded that Mr. Brearman had stolen Company property. The investigation also revealed that a local scrap yard manager produced a sales receipt for the motor bearing Mr. Brearman's name. After consultation with management, the Company terminated his employment on December 16, 2024. Mr. Brearman's actions constituted a profound, irreversible breach of the trust required for industrial operations.

18. On December 19, 2024, the Union filed a grievance contesting Mr. Brearman's discharge on the basis that Plaintiff did not have sufficient just cause to terminate his employment.

19. The Union initiated arbitration on the grievance under Federal Mediation Conciliation Service ("FMCS") Case No. 250804-018516. Lisa Charles was selected to serve as arbitrator by the parties. A hearing on the Union's grievance was conducted on March 6, 2026, in Nazareth, Pennsylvania, and the parties subsequently filed post-hearing briefs with the arbitrator.

20. At the hearing, Plaintiff presented testimonial and video evidence that Mr. Brearman assisted in removing a motor from the clinker silos, failed to respond to repeated attempts at contact, and used an assigned company truck to transfer the motor to his personal vehicle. The video evidence further showed Mr. Brearman leaving Plaintiff's plant in his personal vehicle hours before the end of his shift and without authorization. Plaintiff subsequently confirmed at a local scrapyard that Mr. Brearman had delivered a motor the previous day. The scrapyard produced a receipt bearing his name, and supervisors identified the missing motor—

along with additional motors from the Company's site—through nameplate data matching Company records.

21.     On March 7, 2026—the very day after the arbitration hearing concluded and before a decision was issued—Mr. Brearman was arrested by law enforcement authorities for burglary. After the close of the hearing, Plaintiff learned that Mr. Brearman was arrested in Northampton County on March 8, 2026, and charged with multiple serious offenses, including burglary, criminal trespass, theft by unlawful taking, possession of an instrument of crime, resisting arrest, and evading arrest. *See* Exhibit C (Docket No. MJ-03208-CR-0000071-2026). In researching this matter further, Plaintiff also learned that Mr. Brearman has another pending criminal case involving an assault charge. *Id.*

22.     On March 27, 2026, Plaintiff submitted a formal request to Arbitrator Charles to reopen the record to admit Mr. Brearman's criminal history and criminal docket and permit the parties to address this newly discovered evidence through supplemental briefing or a brief reconvened hearing. *See* Exhibit D (Request to Reopen).

23.     On April 2, 2026, the Arbitrator issued a decision via email denying Plaintiff's request to reopen the record. *See* Exhibit E (Arbitrator Denial to Reopen Record).

24.     On April 6, 2026, the Arbitrator issued her Opinion and Award ordering full reinstatement, back pay, and benefits. *See* Exhibit B (Arbitrator's Award).

## CLAIMS FOR RELIEF

### COUNT I
### Vacate Arbitration Award
### (Failure to Draw Essence From The Collective Bargaining Agreement)

25.     Plaintiff repeats and realleges Paragraphs 1-24 as if set forth fully herein.

26.     Plaintiff seeks to vacate the Award. The Award does not "draw its essence" from the parties' Agreement. Under established Third Circuit law, an arbitration award must be

vacated if it fails to "draw its essence" from the collective bargaining agreement. *See United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379-80 (3d Cir. 1995); *Anheuser-Busch, Inc. v. Local Union No. 744*, 280 F.3d 1133, 1143 (3d Cir. 2002).

27.    An award fails the essence test when an arbitrator ignores the plain language of the contract to dispense their "own brand of industrial justice." *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960); *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1125 (3d Cir. 1969).

28.    Section 2 (Management) of the Agreement exclusively vests the right to discharge for just cause with management. Also, Progressive Discipline Policy, Employee Conduct Rule 22 explicitly defines theft as automatic grounds for termination.

29.    The Arbitrator failed to interpret the contract and instead altered its terms by imposing an extralegal evidentiary burden regarding hearsay.

30.    Because the Arbitrator fundamentally ignored the operational mandates of Section 2 and Rule 22, the Award does not draw its essence from the Agreement.

### COUNT II
### Vacate Arbitration Award
### (Public Policy Violation and Irreparable Breach of Employer Trust)

31.    Plaintiff repeats and realleges Paragraphs 1-30 as if set forth fully herein.

32.    Federal courts vacate arbitration awards that violate well-defined, dominant public policy. *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757 (1983); *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357 (3d Cir. 1993).

33.    There is an explicit public policy against civil theft, conversion, and fraud in the workplace. *See, e.g.*, 18 Pa. C.S. § 3921.

34.    Integral to this public policy is the recognition that an employer cannot safely operate when forced to retain an individual who has forever breached the employer's trust.

6

35.     As a Maintenance Mechanic, the employee is granted independent, unmonitored access to vital plant components. Honesty is a strict bona fide occupational qualification for this position.

36.     By compelling Plaintiff to reinstate an individual linked directly to a stolen $6,800 asset, the Arbitrator strips management of its fundamental right to protect its facility from internal bad actors.

37.     Overturning this Award is critical because a forced reinstatement permanently compromises workplace trust, undermines the safety of co-workers, and obliterates the employer's capability to enforce basic discipline.

**COUNT III**
**Vacate Arbitration Award**
**(Newly Discovered Evidence and Fraud on the Arbitral Process)**

38.     Plaintiff repeats and realleges Paragraphs 1-37 as if set forth fully herein.

39.     An arbitration award may be vacated where it was procured by corruption, fraud, or undue means, or where material, newly discovered evidence demonstrates that the award is based on a fundamental perjury or misrepresentation.

40.     While the Federal Rules of Civil Procedure strictly govern proceedings in federal district courts, courts look to the principles of FRCP 60(b)(2) and FRCP 60(b)(3) as authoritative guidance to vacate inequitable judgments based on newly discovered evidence or fraud.

41.     Under the standard derived from FRCP 60(b)(2), a party is entitled to relief when it uncovers material evidence that could not have been discovered with reasonable diligence prior to the conclusion of the proceeding.

42.     Mr. Brearman's arrest for burglary occurred on March 7, 2026—the morning after the arbitration record closed—rendering it impossible for Plaintiff to discover or introduce material evidence and information at the hearing.

43. Under the standard derived from FRCP 60(b)(3), an order must be set aside if an adverse party engaged in fraud, misrepresentation, or misconduct that prevented a full and fair presentation of the case.

44. Mr. Brearman's extensive under-oath testimony was a direct misrepresentation to the Arbitrator.

45. The newly discovered evidence of a simultaneous felony arrest for burglary destroys Mr. Brearman's credibility, establishes a pattern of dishonest conduct, and confirms that the Award was procured through a distortion of the truth.

46. Enforcing an award that requires the reinstatement of an individual actively engaging in a burglary scheme outside work hours represents a gross miscarriage of justice that federal equity power must correct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Heidelberg Materials respectfully prays for the following relief:

a. That the Award of Arbitrator Lisa Charles in FMCS Case No. 250804-08516 be vacated; and

b. Any such further relief as the Court deems equitable, just, and proper.

Respectfully submitted,

Dated: July 6, 2026

HEIDELBERG MATERIALS U.S. CEMENT, LLC

By:    */s/ Christopher M. Lucca*
Christopher M. Lucca, Esquire
Clark Hill
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
(215) 864-8073
clucca@clarkhill.com

*Attorney for Plaintiff*

8